IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GEORGIANA CAVENDISH,**<br>226 C Street, NW<br>Apt. 4<br>Washington, DC 20002<br><br>       Plaintiff,<br><br>v.<br><br>**MEDELCO, INC.**<br>54 Washburn Street<br>Bridgeport, CT 06605<br><br>   Serve:<br>   Walter J. Wolczek<br>   136 Horse Tavern Road<br>   Trumbull, CT 06611<br><br>~and~<br><br>**DURAN GROUP GMBH**<br>Hattenbergstrasse 10<br>55112 Mainz<br>Germany, OT 55122<br><br>   Serve: The German Central Authority<br><br>**BED BATH & BEYOND, INC.**<br>650 Liberty Avenue<br>Union, NJ 07083<br><br>   Serve:<br>   Corporation Service Company<br>   1090 Vermont Ave., NW<br>   Washington, DC 20005<br><br>~and~ | Case No. |

**BED BATH & BEYOND OF GALLERY PLACE, L.L.C.**
650 Liberty Avenue
Union, NJ 07083

Serve:
Corporation Service Company
1090 Vermont Ave., NW
Washington, DC 20005

Defendants.

# COMPLAINT

*COMES NOW,* Plaintiff, by and through the undersigned counsel, and files this complaint, and for this cause of action states:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff is a citizen of the District of Columbia, and Defendants are businesses incorporated in the Connecticut, New Jersey, and German, and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

2. This Court has personal jurisdiction over Defendants pursuant to D.C. Code § 11-921, and by virtue of the fact that all acts and omissions complained of occurred within the District of Columbia, and because Defendants have the requisite minimum contacts with the District of Columbia.

3. Venue lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1402 since the occurrence which gave rise to the cause of action arose in the District of Columbia.

## PARTIES

4. Plaintiff Georgiana Cavendish (hereinafter referred to as "Plaintiff") is and, at all times relevant to this action, was an adult resident of the District of Columbia.

5. Defendant Medelco, Inc. (hereinafter referred to as "Medelco") is and, at all times relevant to this action, was a corporation incorporated in the State of Connecticut with a principal place of business in Connecticut.

6. Defendant Duran Group Gmbh is a foreign corporation from Germany that sells its products within the United States.

7. Defendant Bed Bath and Beyond, Inc. is and, at all times relevant to this action, was a business incorporated in the State of Delaware with a principal place of business in New Jersey and conducting business in the District of Columbia.

8. Defendant Bed Bath and Beyond, of Gallery Place, L.L.C. is and, at all times relevant to this action, was a business incorporated in the State of Delaware with a principal place of business in New Jersey and conducting business in the District of Columbia.

## BACKGROUND

9. Defendant Duran is a glass manufacturer operating in Germany.

10. Prior to January 26, 2016, Defendant Duran manufactured, among other things, glass bowls that were utilized in making coffee pots and tea kettles.

11. Prior to January 26, 2016, Defendant Medelco manufactured glass tea kettles to be sold to the public at large.

12. Upon information and belief, Defendant Medelco utilized glass manufactured by Defendant Duran to make glass tea kettles.

13. Upon information and belief, one such glass tea kettle manufactured with Defendant Duran's glass by Defendant Medelco was the "Medelco Stovetop Whistling 12-Cup Glass Tea Kettle" (hereinafter referred to as the "Product").

14. Defendant Medelco allowed for the Product to be sold in Defendant Bed Bath & Beyond, Inc.'s stores across the country including the Bed Bath & Beyond at Gallery Place.

15. Defendant Bed Bath & Beyond, Inc. regularly sells goods such as the Product.

16. Plaintiff purchased the Product at the Bed Bath & Beyond location in Gallery Place.

17. On January 26, 2016, Plaintiff used the product in its designed purpose to heat water on the stove.

18. On January 26, 2016, when Plaintiff lifted the Product off of the stove, a large section of glass separated from the tea kettle and hot water poured onto her lap.

19. As a result of the fractured glass releasing heated water onto her lap, Plaintiff suffered a 15-cm second degree burn to her upper leg and other injuries.

20. Plaintiff then sought out medical treatment for her burns and incurred medical expenses and bills.

21. The burn eventually formed multiple boils that eventually ruptured.

22. Analysis of the fractured glass demonstrates that thermal stress cracks formed in the bottom layer of the glass and that radial stress cracks were present on both the tea kettle and on the separated piece of glass section that fractured off.

23. Analysis of the fractured glass also demonstrated that the glass was not tempered glass.

24. The presence of thermal stress cracks demonstrate that the glass was not of the proper borosilicate composition with a low thermal expansion coefficient as required for such a product.

25. Defendants knew or should have known of such defects.

26. Thermal stress cracks create an unreasonable risk of danger.

27. Thermal stress cracks are not created in glass that has been properly manufactured and/or designed for the intended use that Plaintiff and all citizens would use the Product.

28. The presence of thermal stress cracks shows that the material used for the glass tea pot was not suitable for the intended application.

29. Defendants failed to provide any warning of such dangers associated with using the Product for its designed and intended use.

### Count I
### (Strict Liability - Design Defect)

30. Each of the preceding paragraphs shall be incorporated herein as though the same were restated here.

31. Upon information and belief, Plaintiff's injuries were caused by defective design of the Product. If the Product had not been defectively designed, Plaintiff would not have sustained her injuries.

32. In further support, Plaintiff claims:

   (a) That the Product was in its defective condition at the time it left possession of the Defendants.
   (b) That the Product was unreasonably dangerous to Plaintiff, who was an intended user and consumer.
   (c) That the defect was a proximate and direct cause of the injuries sustained by Plaintiff.
   (d) That the Product was expected to and did reach the consumer in its condition without substantial change;
   (e) and being otherwise defective.

33. The Product was placed into the stream of commerce and sold by Defendants in a defective and unreasonably dangerous condition in that the Product contained latent design and manufacturing flaws, which resulted in the Product being dangerous to an extent beyond that which

any purchaser, including the Plaintiff, contemplated and in the Product malfunctioning while being used for its intended purpose.

34. As a result of the defect described above, Plaintiff suffered serious and permanent injuries and monetary damages including, but not limited to, medical expenses and loss of earnings. Furthermore, Plaintiff suffered further conscious pain, suffering, and mental anguish.

35. Plaintiff also claims that she suffered the injuries without the presence of any negligence on her part.

## Count II
### (Strict Liability - Manufacturing Defect)

36. Each of the preceding paragraphs shall be incorporated herein as though the same were restated here.

37. Upon information and belief, Plaintiff's injuries were caused by a manufacturing defect of the Product. If the Product had not been defectively manufactured, Plaintiff would not have sustained her injuries.

38. The Product was placed into the stream of commerce and sold by Defendants in a defective and unreasonably dangerous condition in that the Product contained latent manufacturing flaws, which resulted in the Product malfunctioning while being used for its intended purpose.

39. The Product was placed into the stream of commerce and sold by Defendants in a defective and unreasonably dangerous condition in that the Product contained latent design and manufacturing flaws, which resulted in the Product being dangerous to an extent beyond that which any purchaser, including the Plaintiff, contemplated and in the Product malfunctioning while being used for its intended purpose.

40. The defects described above were each a proximate and direct cause of which Plaintiff suffered serious and permanent injuries and monetary damages including, but not limited

6

to, medical expenses and loss of earnings. Furthermore, Plaintiff suffered further conscious pain, suffering, and mental anguish.

41. Plaintiff also claims that she suffers the injuries without the presence of any negligence on her part.

## Count III
### (Negligence)

42. Each of the preceding paragraphs as stated above are incorporated herein by reference.

43. Defendants, their agents, servants and employees, owed a duty to Plaintiff to manufacture and sell products that were not defective.

44. Plaintiff relied upon Defendants, their agents, servants and employees, to manufacture and sell non-defective products.

45. Defendants, their agents, servants and employees either did not possess the degree of skill, care, judgment and expertise required of them, or did not use the degree of skill, care, judgment and expertise required of them in designing, manufacturing, and selling the Product. They thereby breached their duties owed to Plaintiff, including, but not limited to, the following duties:

   a. To properly design a reasonably safe and effective device for the reasonable prudent consumer;
   b. To properly manufacture a reasonably safe and effective device for the reasonable prudent consumer;
   c. Defendant negligently constructed, assembled, inspected and sold the device as described as it was dangerous and unsafe for its intended purpose; and,
   d. Being otherwise negligent.

46. As a direct and proximate result of the aforementioned negligence of Defendants, their agents, servants and employees, Plaintiff has endured economic and non-economic damages, including significant and severe physical and mental anguish, additional medical treatment, and loss of earnings and economic capacity.

47.   Plaintiff also asserts that the injuries were due to in no part to any negligence done by her.

48.   Plaintiff also asserts the doctrines of *res ipsa loquitur* and *respondeat superior*.

## Count IV
### (Breach of Warranty, Implied Warranty-Merchantability)

49.   Each of the preceding paragraphs stated above shall be incorporated herein as though the same were restated here.

50.   Defendants were each merchants of the Product.

51.   The Product that was sold to Plaintiff did not conform with the ordinary and customary properties of such other like and similar products.

52.   Prior to the incident in question, Defendants expressly/impliedly warranted to Plaintiff that the Product was merchantable and fit for the ordinary purpose for which devices like such are intended.

53.   The defect in the product that did not conform to warranties of the Product caused the Plaintiff's injuries.

54.   Prior to the sale of the Product involved herein, Defendants impliedly warranted to Plaintiff that the Product was fit for the particular purpose for its intended use.

55.   Defendants breached their express and implied warranties despite having reasonable notice of problems with the Product at issue in this Complaint.

56.   As a result of Defendants' breach of warranty in causing the injuries sustained by Plaintiff, Plaintiff has suffered serious and permanent injuries and monetary damages including but not limited to medical expenses and loss of earnings. Plaintiff further suffered serious conscious pain and suffering and mental anguish.

57.   Plaintiff has been injured without any negligence on her part.

## Count V
### (Breach of Warranty, Implied Warranty-Fitness for Particular Purpose)

58. Each of the preceding paragraphs as stated above shall be incorporated herein as though the same were restated here.

59. Prior to the incident in question, Defendants knew that this Product was to be used to heat and boil water on a stove.

60. Plaintiff relied upon Defendants skill and/or judgment to furnish a suitable product for the purpose of heating and/or boiling water on a stove.

61. Defendants knew that Plaintiff was relying upon them to furnish her a product that was suitable for heating and/or boiling water on a stove.

62. Defendants breached their duty by failing to provide Plaintiff a suitable product for heating and/or boiling water on a stove.

63. As a result of Defendants' failure, Plaintiff has suffered serious and permanent injuries and monetary damages including but not limited to medical expenses and loss of earnings. Plaintiff further suffered serious conscious pain and suffering and mental anguish.

64. Plaintiff has been injured without any negligence on her part.

## Count VI
### (Failure to Warn)

65. Each of the preceding paragraphs as stated above shall be incorporated herein as though the same were restated here.

66. Prior to the incident in question, Defendants had a duty to warn Plaintiff of any injuries or risks associated with the use of the Product.

67. Defendants breached their duty to warn by failing to provide any notice to Plaintiff that use of the Product could result in further damage to her.

68. As a result of Defendants' failure to warn, Plaintiff has suffered serious and permanent injuries and monetary damages including but not limited to medical expenses and loss of earnings. Plaintiff further suffered serious conscious pain and suffering and mental anguish.

69. Plaintiff has been injured without any negligence on her part.

**WHEREFORE**, Plaintiff Cavendish demands judgment against Defendants in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00) in damages, plus costs of this suit, and such other and further relief as this Court deems just and proper.

Dated: January 24, 2019

Respectfully submitted,

PAULSON & NACE, PLLC

_____
Matthew A. Nace, Bar No. 1011968
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
man@paulsonandnace.com
*Counsel for Plaintiffs*

### Jury Demand

Plaintiff, by and through the undersigned counsel and pursuant to Rule 38 of the District of Columbia Rules of Civil Procedure, hereby demands trial by jury of all issues in this matter.

_____
Matthew A. Nace